FILED

09 JUL -6 PM 12:29

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE HOYT, <br><br> Plaintiff, <br> vs. <br><br> CAREER SYSTEMS DEVELOPMENT CORPORATION, <br><br> Defendant. | CASE NO. 07CV1733 BEN (RBB) <br><br> ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> [Dkt. No. 29] |

## INTRODUCTION

Defendant Career Systems Development Corporation's ("CSDC") motion for summary judgment is before the Court. Dkt. No. 29. CSDC moves for summary judgment on all seven of Plaintiff Darlene Hoyt's ("Dr. Hoyt") causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, wrongful termination in violation of public policy, wrongful termination based on race, intentional infliction of emotional distress, negligence, and violation of the Unruh Civil Rights Act. For the reasons discussed below, the Court grants in part and denies in part CSDC's motion for summary judgment.

## BACKGROUND

Dr. Hoyt filed her initial complaint in this action in San Diego Superior Court. After a number of demurrers, Dr. Hoyt filed the Second Amended Complaint ("SAC") lacking two previous defendants, creating complete diversity, and allowing CSDC to remove the case to this Court. The case arises out of CSDC's termination of Dr. Hoyt, a licensed psychologist. CSDC is a private company that contracts with the United States Department of Labor ("DOL") to provide no-cost education and vocational training to young people – trainees. Dr. Hoyt worked for CSDC through a

series of contracts from 1987 until early 2007, when her contract was terminated. She provided mental health services to CSDC's trainees.

The relevant contract began October 1, 2003. The contract provided for an initial two years with three one year extensions. In May of 2006, Dr. Hoyt complained to her supervisors and the DOL about CSDC's violation of trainees' privacy rights and one of CSDC's employees making psychological decisions without a license. At some point after these complaints were made and prior to commencement of the second extension year, CSDC sought approval from the DOL to change the contract position with Dr. Hoyt into a full-time, in-house employee position. However, on October 1, 2006, CSDC exercised it option and extended Dr. Hoyt's contract for an additional year with a 2.2% increase. Although it is unclear exactly when CSDC knew the DOL was going to approve the change, CSDC had final approval by October 2006 and gave Dr. Hoyt notice of the termination of her contract in late November 2006.

CSDC claims it simply decided it would be more cost-effective to hire an in-house employee rather than contracting with Dr. Hoyt and terminated her contract as soon as it knew it obtained DOL approval. Dr. Hoyt claims that her termination was part of a cumulative effort to terminate Caucasian employees and replace them with African American employees and a response to her reporting CSDC's illegal conduct to the DOL.

## DISCUSSION

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party meets this burden, the burden then shifts to the opposing party to set forth specific facts showing that a genuine issue remains for trial. *Id.*

A moving party can meet its initial burden by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party

meets this burden of production, the burden shifts to the nonmoving party to "produce enough evidence to create a genuine issue of material fact." *Id.* at 1103 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

## I. Breach of Contract

CSDC claims Dr. Hoyt cannot prove a breach of the contract because the evidence shows that CSDC terminated the contract in compliance with the terms of the contract. The termination language of the contract reads:

> This agreement may be terminated with respect to the remaining terms of the agreement, at any given time by either party upon a written notice thereof to the other, effective sixty (60) days after acknowledgment of receipt of said notice.

Dr. Hoyt's contract provided for an initial two-year period commencing on October 1, 2003 and continuing through September 30, 2005 with three one-year extensions. On November 28, 2006, almost two months after the second of the possible three extensions had commenced, CSDC provided Dr. Hoyt with written notice that the contract would be terminated 60 days from her acknowledgment of receipt of the notice.

The Court "may grant summary judgment motions touching upon contract interpretation when the agreement is unambiguous." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). "Ambiguity is a question of law for the court." *Id.* at 889. CSDC argues there can be no breach because either party was allowed to terminate the contract "at any given time" effective 60 days after notice was given and CSDC gave 60 days notice. However, as Dr. Hoyt points out, the contract also included the language "as to the remaining terms." Dr. Hoyt argues the "remaining terms" were the remaining extension years on the contract, with each extension year being a term that could only be terminated if notice was given 60 days before that term began. While the language "effective 60 days after acknowledgment" suggests termination was possible for any portion of an extension year, the Court cannot ignore the ambiguity of what the "remaining terms" are. Is it only the remaining extension terms or remaining extension terms and the remainder of the term already in progress? The

language of the contract is ambiguous with respect to the second extension year already in progress at the time of termination.

Generally, when there is ambiguity within a contract, as exists here, "summary judgment is improper because differing views of the intent of the parties will raise genuine issues of material fact." *Maffei v. N. Ins. Co.*, 12 F.3d 892, 898 (9th Cir. 1993). Summary judgment should be denied when "construing all evidence in the light most favorable to, and making all reasonable inferences in favor of the nonmoving party, . . . the ambiguity could be resolved in a manner consistent with the nonmoving party's claim" *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997). Here, the ambiguity could be resolved in Dr. Hoyt's favor on the second extension already in progress, however it could not as to the third extension year.

Dr. Hoyt can make no claim on the third extension year because there is no ambiguity about that extension. Under either view, CSDC gave 60 days notice of termination well before the beginning of the third extension year, precluding any claim for breach on that portion of the contract. Accordingly, summary judgment is **DENIED** on the breach of contract cause of action as to the second year extension, but **GRANTED** as to the third year extension.

## II. Breach of the Implied Covenant of Good Faith and Fair Dealing

Dr. Hoyt cannot prove a breach of the implied covenant of good faith and fair dealing because she is attempting to enforce terms that contradict the express terms of the contract. Dr. Hoyt's SAC alleges that Defendants breached the implied covenant of good faith and fair dealing because the contract contained an implied covenant granting her all three one-year extensions under the contract and similar employment contracts at the expiration of the five-year contract term, absent any material performance issues.

Dr. Hoyt cannot prove breach of the implied covenant of good faith and fair dealing based on the extension years or a new contract following the existing one because an implied covenant cannot stretch that far. "The covenant cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of the agreement." *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 779 (9th Cir. 2003) (citing *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000)). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely

to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz,* 24 Cal. 4th at 349. "If there exists a contractual relationship between the parties, as was the case here, the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." *Racine & Laramie, Ltd. v. Dept of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (4th Dist. 1992). Because Dr. Hoyt's claims of entitlement to the extension years and a new contract following this one are not contained within the express terms of the contract and those terms contradict the express terms of the contract, they are not covered by the covenant of good faith and fair dealing.

Additionally, the "failure or refusal to discharge contractual responsibilities, [must be] prompted not by an honest mistake, bad judgment or negligence, but rather a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party, thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (2nd Dist. 1990). There is no evidence of such conduct here.

Dr. Hoyt points to CSDC's failure to notify her about its efforts to obtain approval from the DOL for a full-time position that would replace Dr. Hoyt. Dr. Hoyt complains that CSDC should have told her it was working toward replacing her, however, this again is an attempt to create an obligation that does not exist under the contract. Even if CSDC was required to notify her 60 days before the second extension year began to terminate that extension year, her recourse is for breach of contract as to the remainder of the second year extension, not breach of the implied covenant of good faith and fair dealing. *Careau & Co.*, 222 Cal. App. 3d at 1395 (finding "relief already obtained in a companion contract cause of action . . . may be disregarded as superfluous"). Because Dr. Hoyt's claims under the implied covenant of good faith and fair dealing are either precluded by the express terms of contract or duplicative of the breach of contract claim, the Court **GRANTS** CSDC summary judgment on the implied covenant of good faith and fair dealing.

### III. Wrongful Termination

In the third and fourth causes of action, Dr. Hoyt's SAC alleges wrongful termination based on violation of public policy and race discrimination. Additionally, Dr. Hoyt raises a new cause of

action for wrongful termination based on age discrimination in her Opposition to summary judgment.

In considering a motion for summary judgment, California follows the *McDonnell-Douglas* burden-shifting test adopted by the U.S. Supreme Court. *Guz*, 24 Cal. 4th at 354 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).[1] Dr. Hoyt must provide evidence to support her *prima facie* case. *Id.* If she meets this burden, the burden shifts to CSDC to provide evidence of a legitimate, non-retaliatory reason for Dr. Hoyt's termination. *Id.* If CSDC meets its burden, the burden shifts back to Dr. Hoyt to provide evidence that CSDC's given reason is pretextual. *Id.*

### A. Wrongful Termination in Violation of Public Policy

When a defendant seeks summary judgment on a cause of action for wrongful termination in violation of public policy, the plaintiff must show that she engaged in a protected activity, that she was subjected to an adverse employment action, and that a causal link existed between the protected activity and the employer's action. *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109 (4th Dist. 2007). This is a plaintiff's *prima facie* case. *Id.* CSDC argues it is entitled to summary judgment because Dr. Hoyt was an independent contractor, she cannot meet the first element of her *prima facie* case, engaging in a protected activity, and she cannot show that CSDC's given reason for terminating her was pretextual.[2]

#### 1. Independent Contractor or Employee

Dr. Hoyt may succeed on a wrongful termination cause of action based on violation of public policy only if she was an employee, rather than an independent contractor. *See Ali v. L.A. Focus Publ'n*, 112 Cal. App. 4th 1477, 1484-85 (2nd Dist. 2003) (noting the California Supreme Court has not yet reached the question, but finding other appellate courts have also reached this conclusion). An independent contractor cannot maintain an action for wrongful termination because they are not part

---

[1] The *McDonnell-Douglas* "test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially. Thus, by successive steps of increasingly narrow focus, the test allows discrimination to be inferred from facts that create a reasonable likelihood of bias and are not satisfactorily explained." *Guz*, 24 Cal. 4th at 354.

[2] CSDC states in its motion that "Plaintiff cannot establish a causal link existed between her complaints about alleged unethical and illegal business practices and cancellation of her Contract," but provides no argument challenging Dr. Hoyt's ability to prove this element. However, the Court notes that the "proximity in time between the protected activity and the allegedly retaliatory employment decision" can satisfy the plaintiff's initial burden. *Loggins*, 151 Cal. App. 4th at 1112.

of an employee-employer relationship. *Id.* In this regard, the evidence presented is mixed. It is unclear whether Dr. Hoyt was an employee or an independent contractor.

While there are secondary factors, the "most important consideration" in determining whether an individual is an employee or an independent contractor is the control test, which considers "whether the person to whom the service is rendered has the right to control the manner and means of accomplishing the result desired." *S.G. Borello & Sons, Inc. v. Dept of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). In applying the control test, there are a number of material facts in dispute which preclude summary judgment on this basis, including: whether Dr. Hoyt was able to set her own schedule or was required to work set hours with appointments scheduled by CSDC; the extent of supervision via mandatory requirements and reporting; and whether CSDC controlled when and how Dr. Hoyt provided services to CSDC's trainees. Because there are genuine issues of material fact concerning whether Dr. Hoyt was an employee or an independent contractor, the Court cannot grant summary judgment on that basis.

### 2. Protected Activity

Furthermore, Dr. Hoyt must present evidence that CSDC terminated her in violation of "a public policy that is (1) embodied in a statute or constitutional provision, (2) beneficial to the public, (3) articulated at the time of discharge, and (4) fundamental." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) (citing *Stevenson v. Superior Court*, 16 Cal. 4th 880, 889 (1997)). "Public policy may be implicated when an employer fires an employee for refusing to commit a crime, reporting criminal activity to the proper authorities, or disclosing illegal, unsafe, or unethical practices of the employer." *Id.*

Dr. Hoyt has provided evidence that, in addition to complaining to her supervisors at CSDC, she also complained to Dr. Andrew Berger, with the DOL, about conduct Dr. Hoyt believed was unethical and illegal. She complained about an unlicensed person making psychological decisions and conduct she believed violated the privacy rights of patients.[3] Among other statutes and regulations, Dr. Hoyt has identified California Business and Professions Code § 2903, which prohibits the

---

[3]Dr. Hoyt is not required to prove an actual violation of the law. *Green v. Ralee Eng. Co.*, 19 Cal. 4th 66, 87 (1998).

unlicensed practice of psychology, as a fundamental statute intended to protect the public, existing at the time of termination.[4] Dr. Hoyt has provided evidence that she reported conduct she believed violated the law to a governmental agency meeting her burden on this element.

### 3. Legitimate, Non-retaliatory Reason for Termination

When a plaintiff meets her initial burden, as Dr. Hoyt has done here, the burden shifts to CSDC to provide evidence of a "legitimate, non retaliatory reason" for the adverse employment action. *Loggins*, 151 Cal. App. 4th at 1109. If CSDC meets this burden, the burden shifts back to Dr. Hoyt to provide "substantial responsive evidence" that the employer's reasons were untrue or pretextual. *Id.*

CSDC claims that Dr. Hoyt was terminated because CSDC could provide expanded services to its trainees at a lower cost by hiring a full-time, in-house employee to replace Dr. Hoyt's contracted services. In support of its contention that a cost savings was the legitimate, non-retaliatory reason for Dr. Hoyt's termination, CSDC asserts, as an undisputed material fact, that a "full-time mental health employee would provide 40 hours or more of Mental Health services at an annual cost of $80,000 to $100,000." The claimed cost for a full-time employee is significant because it is less than the base $106,000 CSDC was paying Dr. Hoyt under her contract. On this point, CSDC's evidence does not provide any support for these numbers. The cited deposition testimony of Eugene Harris, CSDC Director and Monica Spinks, Health and Wellness Manager, reflects only their general opinions, that CSDC could get more expanded services, more people for more hours, and could effectively reduce expenditures and be more efficient with utilization of those services. While the cited testimony does not support the specific factual conclusion asserted, in combination with other evidence, that CSDC experienced an increase in the number of students in need of mental health services and evidence Dr. Hoyt regularly billed outside her contract at a cost greater than $106,000, CSDC has met its burden to provide evidence of a legitimate, non-retaliatory reason for the adverse employment action.

//

---

[4] The Court notes the general provisions cited by Dr. Hoyt concerning patient privacy under California and Federal law, as presented, are not sufficiently explicit as to what conduct is prohibited to establish a fundamental public policy that supports a wrongful termination cause of action. *See Carter v. Escondido Union High Sch. Dist.*, 148 Cal. App. 4th 922, 930 (4th Dist. 2007).

By meeting its burden to produce evidence of a legitimate, non-retaliatory reason for Dr. Hoyt's termination, CSDC shifts the burden back to Dr. Hoyt to produce evidence that CSDC's reason was pretextual or untrue. *Loggins*, 151 Cal. App. 4th at 1109. Dr. Hoyt can "prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing unlawful discrimination more likely motivated the employer." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1170 (9th Cir. 2007). However, at the summary judgment stage, Dr. Hoyt is not obligated to prove that the real reason is illegal discrimination. *Id.*

Dr. Hoyt has succeeded in producing evidence that undermines the credibility and believability of CSDC's reason. Her evidence indicates that CSDC did not engage in any sort of analysis to determine if termination of Dr. Hoyt would save money and the psychologist that eventually held the full-time position actually cost CSDC at least $114,000 between salary and benefits. Viewing the evidence in the light most favorable to Dr. Hoyt, the credibility of CSDC's reason is undermined by Dr. Hoyt's evidence concerning cost, particularly in the absence of any evidence supporting CSDC's assertion that a full-time in-house employee could replace Dr. Hoyt for $80,000 to $100,000. Additionally, evidence that Dr. Hoyt's termination was not based on any issues with her performance and the close proximity between when Dr. Hoyt complained about CSDC's violations and CSDC began working towards termination of her position also raise doubts sufficient to cause a reasonable fact-finder to deem CSDC's reason unworthy of credence. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (finding "the fact-finder's disbelief of the reasons put forward by the defendant . . . may together with the elements of the *prima facie* case, suffice to show intentional discrimination). Accordingly, summary judgment is **DENIED** on the wrongful termination in violation of public policy cause of action.

### B. Wrongful Termination Based on Race

Dr. Hoyt's cause of action for wrongful termination based on race discrimination is also precluded if she was an independent contract and follows the same burden shifting analysis discussed above, but, since the Court has already found Dr. Hoyt provided evidence sufficient to raise a genuine issue of material fact concerning whether she was an independent contractor and CSDC's reason for

termination, the Court need only consider whether Dr. Hoyt can support her *prima facie* case for wrongful termination based on race.

Generally, a plaintiff must provide evidence that (1) she was a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) some other circumstance suggesting a discriminatory motive." *Guz*, 24 Cal.4th at 354. However, in arguing the *prima facie* case, CSDC only argues that Dr. Hoyt, a Caucasian, cannot meet her burden because she was replaced by someone of the same class. If so, that would preclude Dr. Hoyt's discrimination cause of action. *See Brown v. McLean*, 159 F.3d 898, 905 (4th Cir. 1998) (applying *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) and finding that a plaintiff must ordinarily show a position was filled by someone not a member of the protected class); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (finding the hiring of replacements not within the protected class met the fourth element of the *prima facie* case).

Here, Dr. Hoyt has produced evidence that she was replaced by someone not of the same protected class. While CSDC has provided the deposition testimony of Spinks which indicates that Dr. Hoyt was replaced by Dr. Kurland, a Caucasian, Dr. Hoyt has provided the deposition testimony of Dr. Kurland, which indicates that Dr. Kurland took over the position from Dr. Mills, an African American, who held the position "in the interim." Neither party has provided evidence of the length of Dr. Mills' service in Dr. Hoyt's former position or the effect, if any, of someone not in Dr. Hoyt's protected class holding that position in an interim capacity. It may be there is no factual dispute on this point, but "[e]ven where facts are undisputed summary judgment is not appropriate where divergent inferences may reasonably be drawn from those undisputed facts." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985). Accordingly, summary judgment is **DENIED** on Dr. Hoyt's cause of action for wrongful termination based on race.

C.   **Wrongful Termination Based on Age**

Dr. Hoyt's attempt to add a new cause of action for wrongful termination based on age in her Opposition to summary judgment is rejected. Dr. Hoyt's SAC lacks any claim based on age discrimination or any facts that would even remotely support such a claim. Because a new claim cannot be raised for the first time in opposition to summary judgment, Dr. Hoyt cannot maintain a

cause of action for age discrimination. *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); *Pickern v. Pier 1 Imps., Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006).

## IV. Intentional Infliction of Emotional Distress

The elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress. *King v. AC & R Adver.*, 65 F.3d 764, 769 (9th Cir. 1995). Because Dr. Hoyt has failed to raise a genuine issue of material fact on the first element, extreme and outrageous conduct by CSDC, the Court need not address the other three elements.

Dr. Hoyt has failed to produce evidence of any conduct by CSDC that would constitute extreme and outrageous conduct. "Conduct, to be outrageous, must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id.* at 770. While Dr. Hoyt argues that discrimination can rise to the level of extreme and outrageous conduct, it has been the extreme and outrageous *nature* of the conduct that supports the intentional infliction of emotional distress cause of action. *Alcorn v. Anbro Eng., Inc.*, 2 Cal. 3d 493, 496-97 (1970) (employer violently shouted racial epithets at plaintiff in presence of co-workers as he was firing him). The conduct Dr. Hoyt complains of here does not rise to this level.

Dr. Hoyt has provided evidence that CSDC questioned the amount of time she spent providing services, singled out Dr. Hoyt for billing records review, refused to relocate her office, ignored her complaints about Spinks being too involved with patients, and increased the hours of another doctor and refused the same for Dr. Hoyt. All of the conduct falls into the category of personnel management decisions, which do not constitute outrageous conduct, even when done intentionally and with an improper motive. *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (2nd Dist. 1996) (finding improperly motivated personnel management activity appropriate for a discrimination claim, but insufficient to support a claim for intentional infliction of emotional distress). Because Dr. Hoyt has not produced any evidence of extreme and outrageous conduct by CSDC, the Court **GRANTS** CSDC summary judgment on the intentional infliction of emotional distress cause of action.

//

## V. Negligence

Dr. Hoyt attempts to change her prior claim for negligence in the hiring of Spinks and negligent supervision into a brand new claim for negligent enforcement of the contract in her Opposition to summary judgment. Once again, her effort to add a new claim on summary judgment is rejected. Dr. Hoyt's SAC lacks any claim based on negligent performance of the contract. Because, as previously discussed, a new claim cannot be raised for the first time in opposition to summary judgment, Dr. Hoyt cannot maintain a cause of action for negligent performance of the contract. *Navajo Nation*, 535 F.3d at 1080; *Pickern*, 457 F.3d at 968-69. Additionally, Dr. Hoyt has failed in her Opposition to identify any evidence to support her existing cause of action for negligent hiring and supervision. Accordingly, the Court **GRANTS** summary judgment the cause of action for negligent hiring and supervision.

## VI. Unruh Civil Rights Act

California's Unruh Civil Rights Act, California Civil Code § 51, prohibits businesses from denying "full and equal accommodations" on the basis of "sex, race, color, religion, ancestry, national origin, disability, or medical conditions." It does not apply to the employer-employee relationship and has no application to employment discrimination. *See Alcorn*, 2 Cal. 3d at 500; *Rojo v. Klinger*, 52 Cal. 3d 65, 77 (1990). Dr. Hoyt relies on a very narrow holding by a California Court of Appeals in arguing that she can succeed on this cause of action. *See Payne v. Anaheim Mem. Med. Ctr., Inc.*, 130 Cal. App. 4th 729, 745-46 (4th Dist. 2005). The guidance of our own Ninth Circuit, applying the *Payne* decision illustrates why Dr. Hoyt's cause of action under § 51 cannot succeed. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1125-26 (9th Cir. 2008).

All the distinctions the Ninth Circuit found sufficient to distinguish *Johnson* from *Payne* and precluded the § 51 cause of action also apply here. First, Dr. Hoyt worked for and was regularly compensated by CSDC. Second, she was obligated to provide services to CSDC trainees, rather than just using a facility to treat her own patients. Third, CSDC scheduled her appointments and imposed reporting requirements.

Additionally, where the relationship between the parties is "more akin to that of an employee than that of a 'client, patron, or customer'" a plaintiff may not succeed with a cause of action under § 51. *Id.* at 1126 (citing *Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 863 (9th Cir.

1996)). "California law continues to require a plaintiff asserting a claim under § 51 to demonstrate that his relationship with the offending organization was 'similar to that of the customer in the customer-proprietor relationship.'" *Id.* at 874. Dr. Hoyt has made no such demonstration. Accordingly, the Court **GRANTS** CSDC summary judgment on the § 51 cause of action.

## VII. Rule 56(f)

In Opposition, Dr. Hoyt requests the Court deny CSDC's motion entirely or delay hearing on the motion because of ongoing discovery, but fails to meet the requirements of Federal Rule of Civil Procedure 56(f). The Court may only grant this request if Dr. Hoyt "shows by affidavit that, for specified reasons, [she] cannot present facts essential to justify [her] opposition." FED. R. CIV. PROC. 56(f). By affidavit she "must identify the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). Dr. Hoyt's Opposition simply states that she wants to complete discovery without any indication what discovery she needs to complete, what the discovery is expected to show, or what causes of action it might impact, and without identification of or reference to the required affidavit. A declaration, not even referenced on this point, does list some outstanding discovery, but fails to indicate what facts may be revealed, explain how they would preclude summary judgment, or what causes of action it might impact. Accordingly, Dr. Hoyt's Rule 56(f) request is **DENIED**.

## CONCLUSION

The Court **DENIES** summary judgment on the causes of action for breach of contract as to the second extension year, wrongful termination in violation of public policy, and wrongful termination based on race discrimination. The Court **GRANTS** summary judgment on the causes of action for breach of the implied covenant of good faith and fair dealing, negligence, intentional infliction of emotional distress, violation of the Unruh Civil Rights Act, and breach of contract as to the third extension year.

**IT IS SO ORDERED.**

DATED: July 16, 2009

Hon. Roger T. Benitez
United States District Judge