FILED
2010 JUL -1 AM 8:12
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE HOYT,<br><br>          Plaintiff,<br><br>vs.<br><br>CAREER SYSTEMS DEVELOPMENT CORPORATION,<br><br>          Defendant. | CASE NO. 07cv1733 BEN (RBB)<br><br>**ORDER DENYING**:<br>• EX PARTE MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL<br>• EX PARTE MOTION TO BIFURCATE TRIAL<br>• EX PARTE SUPPLEMENTAL MOTION IN LIMINE NO. 1 |

Defendant Career Systems Development Corporation has filed three ex parte motions: (1) to disqualify Plaintiff's counsel; (2) to bifurcate and try first the issue of Plaintiff's status as an independent contractor; and (3) supplemental motion in limine No. 1 concerning Plaintiff's third cause of action. Dkt. Nos. 125, 130, 132. For the reasons that follow, the motions are denied.

I.     **Defendant's Motion to Disqualify Plaintiff's Counsel**

On April 26, 2010, Defendant CSDC filed an ex parte request for an order disqualifying Plaintiff's counsel, Paul Kondrick, based on his ex parte communication with a current employee of CSDC, Kay Coker, without notifying CSDC's counsel. Dkt. No. 125.

///

///

### A. Background

Ms. Coker was deposed on May 7, 2008 by Plaintiff's former counsel, Joshua Gruenberg. She was represented by CSDC's counsel at her deposition, but only for purposes of her deposition. Ms. Coker and CSDC's counsel concluded on the record that she was represented by CSDC's counsel because CSDC's counsel represents the company and she works for the company. But, CSDC's counsel and Ms. Coker both go on to state that she is only represented by CSDC's counsel for purposes of the deposition.[1]

Recently, in response to receiving a trial subpoena from Mr. Kondrick, Ms. Coker contacted Mr. Kondrick's office, expressed concerns about incorrect statements in her deposition testimony and requested a copy of her deposition transcript. When Ms. Coker was notified that the copy was ready for pick-up, a meeting was scheduled between Ms. Coker and Mr. Kondrick.[2] Ms. Coker claims in her declaration that Mr. Kondrick did not ask her if she was represented by counsel for CSDC and Mr. Kondrick claims in his declaration that at the outset of the meeting they discussed whether she was represented by counsel and Ms. Coker assured him she was not. They discussed the content of her deposition testimony, but according to Mr. Kondrick, she did not disclose any of her communications with attorneys or any confidential communications with her employer about this case.

### B. Discussion

CSDC argues the meeting between Ms. Coker and Mr. Kondrick violated California Rule of Professional Conduct 2-100. Plaintiff argues in opposition that Mr. Kondrick's communications with Ms. Coker were not improper because she was not represented by CSDC's counsel and, even if the communications were improper, CSDC has failed to show how the communications will have a continuing effect on the litigation.

Rule 2-100 prohibits an attorney from communicating with a represented party about the subject of the representation. But, Rule 2-100 "permits opposing counsel to initiate ex parte contacts with *unrepresented* . . . present employees (other than officers, directors, or managing agents) who are not

---

[1] This is consistent with Ms. Coker's declaration in support of CSDC's motion in which she declares, "[a]t my deposition, I was represented by Jonathan Andrews, counsel for CSDC."

[2] The parties dispute whether Ms. Coker or Mr. Kondrick requested the meeting.

1  separately represented, so long as the communication does not involve the employee's act or failure
2  to act in connection with the matter which may bind the corporation, be imputed to it, or constitute an
3  admission of the corporation for purposes of establishing liability." *Triple A Machine Shop, Inc. v.*
4  *California*, 213 Cal. App. 3d 131, 140 (1st Dist. 1989) (emphasis added).

5  "[R]ule 2-100 must be interpreted narrowly because a rule whose violation could result in
6  disqualification . . . should be narrowly construed when it impinges upon a lawyer's duty of zealous
7  representation." *Snider v. Superior Court*, 113 Cal. App. 4th 1187, 1198 (4th Dist. 2003); *Optyl*
8  *Eyewear Fashion Int'l Corp. v. Style Co.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ("disqualification
9  motions should be subjected to particularly strict judicial scrutiny."). Additionally, disqualification
10 for an improper ex parte communication is only justified if it will have a continuing effect on the
11 litigation. *Sheller v. Superior Court*, 158 Cal. App. 4th 1697, 1711 (2nd Dist. 2008) ("disqualification
12 is a drastic course of action [and] is only justified where the misconduct will have a 'continuing effect'
13 on judicial proceedings."); *Baugh v. Garl*, 137 Cal. App. 4th 737, 744 (2nd Dist. 2006) ("The purpose
14 of disqualification is not to punish a transgression of professional ethics [rather,] [d]isqualification is
15 only justified where the misconduct will have a continuing effect on the judicial proceedings.").

16 The parties agree that Ms. Coker is not an officer, director, or managing agent and that she is not
17 in a position to bind the corporation. Accordingly, Mr. Kondrick's communications with Ms. Coker
18 were only prohibited by Rule 2-100 if she was in fact represented by CSDC's counsel when Mr.
19 Kondrick spoke with her. As explained above, it is unclear whether Ms. Coker was represented by
20 CSDC's counsel when she met with Mr. Kondrick, particularly given that she and CSDC's counsel
21 stated on the record at her deposition that Ms. Coker was only represented by CSDC's counsel for her
22 deposition.

23 However, the Court need not resolve this issue for purposes of this motion because CSDC has
24 not demonstrated that the communications, even if improper, would have a continuing effect on the
25 litigation, as required to justify disqualifying Mr. Kondrick. Unlike the cases cited by CSDC, here
26 CSDC has not explained what information Mr. Kondrick obtained from the meeting or how it would
27 have a continuing effect on the litigation. *Chronometrics, Inc. v. Sysgen, Inc.*, 110 Cal. App. 3d 597,
28 599-602 (2nd Dist. 1980) (outlining in detail the information disclosed in 8-10 conversations over the

course of months); *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135, 1141 (1999) (explaining that background, theories of the case, discovery strategies, and analysis of substantive and procedural issues were disclosed); *Mills Land & Water Co. v. Golden West Ref. Co.*, 186 Cal. App. 3d 116, 124 (4th Dist. 1986) (detailing the information disclosed in an improper communication and explaining how it impacted the course of the case).

CSDC argues generally that Mr. Kondrick's communication with Ms. Coker might have a continuing effect on the proceedings through Mr. Kondrick's questioning of Ms. Coker, but fails to explain what it is she told him that he is going to use or explain how it might affect his questioning. Additionally, Mr. Kondrick claims in his declaration that Ms. Coker did not disclose any attorney-client communications or any confidential communications between her and her employer concerning this case. CSDC has not met its burden of demonstrating how the communications will have a continuing effect on the litigation to justify disqualifying Mr. Kondrick. CSDC's motion to disqualify Plaintiff's counsel is **DENIED**.

**II.     CSDC's Ex Parte Motion to Bifurcate Trial and Try First the Issue of Plaintiff's Status as an Independent Contractor**

On May 3, 2010, six court days before the trial of this case was set to begin, CSDC filed an ex parte request to bifurcate trial and try the issue of Plaintiff's status as an independent contractor or an employee first. Dkt. No. 130. CSDC argues that bifurcation of this issue will serve judicial economy because most of Plaintiff's exhibits and witnesses relate to her claim for wrongful termination in violation of public policy – a claim that Plaintiff cannot pursue if she was an independent contractor. However, Plaintiff explains in her Opposition, supported by a declaration, that of the 20 witnesses she expects to call at trial, 17 will provide some testimony addressing whether Plaintiff was an independent contractor or an employee, in addition to testimony on Plaintiffs contract and discrimination claims.

CSDC's motion was filed well after the deadline set for filing motions in limine without any explanation for the delay. This is itself a basis to deny the motion; however, the Court has considered the parties' arguments and denies the motion because it will not serve the interests of judicial economy. While bifurcation might shorten the second phase of the trial if the jury finds Plaintiff was

1 an independent contractor, it would not preclude having 17 witnesses appear and testify to one issue
2 and then return at a later date to testify again on other issues.  Additionally, bifurcating this issue
3 would require time for presentation of testimony on this single issue to the jury, time for deliberations
4 by the jury on this issue, time for presentation of the rest of the case to the jury, and additional time
5 to again submit the case to the jury.  This potential for significant delay in the trial outweighs any
6 potential savings bifurcation might provide.  CSDC's motion to bifurcate is **DENIED**.

### III. CSDC's Supplemental Motion in Limine No. 1 Concerning Plaintiff's Third Cause of Action for Wrongful Termination in Violation of Public Policy

On May 4, 2010, five court days before the trial of this case was set to begin, CSDC filed a supplemental motion in limine to "exclude all evidence of Plaintiff's complaints that Ms. Spinks was performing mental health decisions without a license." Dkt. No. 132.  CSDC argues that because the unlicensed practice of psychology statute was not specifically identified in Plaintiff's Second Amended Complaint ("SAC"), she cannot pursue this claim.  Plaintiff argues in opposition that the SAC expressly alleges CSDC wrongful termination in violation of public policy based on her reports of the unlicensed practice of psychology.

As with CSDC's ex parte motion to bifurcate, this motion was also filed well after the deadline set for motions in limine and provides no explanation for the recent "further analysis of the pleadings" that resulted in the late filing of this motion.  The late filing is itself a basis for denying the motion; however, the Court has considered the parties' arguments and denies the motion because Plaintiff has set forth a "short and plain statement of the claim" for termination in violation of public policy based on Plaintiff's complaints about Ms. Spinks engaging in the unlicensed practice of psychology.  Fed. R. Civ. P. 8(a)(2).  Plaintiff's SAC identifies numerous specific instances when Ms. Spinks engaged in the unlicensed practice of psychology and numerous ways Plaintiff reported that conduct within CSDC and to the U.S. Department of Labor.  Additionally, Plaintiff specifically alleges that Plaintiff's complaints were a motivating factor in her termination from CSDC.  CSDC's motion is **DENIED**.  As indicated in the Court's decision on CSDC's motion for summary judgment and motions in limine, Plaintiff may present evidence "that she was terminated for reporting the unlicensed practice of psychology."

## CONCLUSION

CSDC's ex parte motion to disqualify Plaintiff's counsel is **DENIED**. Dkt. No. 125. CSDC's ex parte motion to bifurcate and try first the issue of Plaintiff's status as an independent contractor is **DENIED**. Dkt. No. 130. CSDC's supplemental motion in limine to exclude all evidence of Plaintiff's complaints that Ms. Spinks was performing mental health decisions without a license is **DENIED**. Dkt. No. 132.

**IT IS SO ORDERED.**

DATED: 6/30/10

Hon. Roger T. Benitez
United States District Court Judge