JONATHAN D. ANDREWS (SBN: 199256)
SHAUNA L. DURRANT (SBN: 228489)
ANDREWS · LAGASSE · BRANCH & BELL LLP
11232 El Camino Real, Suite 250
San Diego, CA 92130
Telephone: (858) 345-5080
Facsimile: (858) 345-5025

Attorneys for Defendant
CAREER SYSTEMS DEVELOPMENT CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE HOYT,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CAREER SYSTEMS DEVELOPMENT CORPORATION,<br><br>　　　　　Defendant. | CASE NO.: 07 CV 1733 BEN (RBB)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION TO QUASH OR OTHERWISE MODIFY TRIAL SUBPOENAS**<br><br>Trial: August 31, 2010<br>Time: 9:30 a.m.<br>Judge: Hon. Roger T. Benitez<br>Courtroom: 3<br><br>Complaint Filed: August 31, 2007 |

Defendant Career Systems Development Corporation ("CSDC") respectfully submits the following opposition to Plaintiff Darlene Hoyt's ("Plaintiff") *ex parte* application to quash or otherwise modify trial subpoenas.

## I.　INTRODUCTION

Ten months ago, CSDC identified all exhibits it intends to use at trial. Among the exhibits identified were several documents Plaintiff had in her possession or were readily accessible, including Plaintiff's tax returns and contracts signed by Plaintiff. Despite Plaintiff's attempt to keep out these documents through an *ex parte* application, arguably because they are detrimental to her claim for damages and her assertion that she was an employee of CSDC, Plaintiff provides no legal basis to do so. Plaintiff was aware of CSDC's intent to use these

-1-

1  documents almost a year ago and never filed an objection. Likewise, Plaintiff is familiar with
2  these documents, since she reviewed and signed virtually all of them, some under the penalty of
3  perjury, and had access to the documents at any time. Because of Plaintiff's possession of these
4  documents, and knowledge months ago that they would be used at trial, Plaintiff has not, and
5  cannot, claim she will be prejudiced by the use of these documents. The documents are clearly
6  relevant to Plaintiff's claims, since Plaintiff's expert relies on them in forming his opinion.
7  Thus, Plaintiff waived any privilege against the disclosure of these documents. Moreover, the
8  documents relate directly to Plaintiff's claim for lost wages, and her assertion that she was an
9  employee of CSDC, not an independent contractor. Therefore, there is no basis to exclude these
10 documents, and Plaintiff's *ex parte* application should be denied.

## II.   STATEMENT OF FACTS

12  Plaintiff filed suit against CSDC on August 31, 2007. On October 6, 2008, CSDC filed a
13 motion for summary judgment. On July 6, 2009, the Court granted partial summary judgment,
14 but allowed three claims to survive: (1) breach of contract; (2) wrongful termination in violation
15 of public policy; and (3) wrongful termination based on race.

16  On October 19, 2009, the Court issued its pretrial conference order (PTO). The PTO
17 contains a list of all trial exhibits proposed by the parties. CSDC identified several exhibits it
18 intended to use at trial, including (1) Exhibit 197 – Plaintiff's Tax Returns; (2) Exhibit 212 –
19 Documents subpoenaed from University of San Diego; (3) Exhibit 213 – Documents subpoenaed
20 by Aetna Life Insurance Co.; (4) Exhibit 214 – Documents subpoenaed from Employers
21 Compensation Insurance Co.; (5) Exhibit 216 - Documents subpoenaed from Human Affairs
22 International Co.; (6) Exhibit 217 – Documents subpoenaed from Human Behavior Associates,
23 Inc.; and (7) Documents subpoenaed from Stacy Hoyt. The PTO also identified all potential
24 witnesses, including Patricia Smith, Plaintiff's accountant, and Stacy Hoyt, Plaintiff's daughter
25 and employee/independent contractor. The Court set trial to begin on February 23, 2010.

26  On February 2, 2010, Plaintiff served CSDC with a trial subpoena to appear ***and produce***
27 ***documents***. (Ex. 1, Trial Subpoena.)

28

ANDREWS · LAGASSE · BRANCH & BELL LLP
11232 El Camino Real, Suite 250
San Diego, CA 92130

1  After the parties filed a joint motion to continue trial, the Court continued that trial to May 11, 2010. On April 26, 2010, Stacy Hoyt was served with a subpoena to appear at trial and produce documents on the first day of trial. (Ex. 2, First POS for Subpoena to S. Hoyt.) Stacy Hoyt received the subpoena at her place of work, which is the office she shares with her mother, Plaintiff. Neither Plaintiff nor Stacy Hoyt filed an objection to this subpoena.

On May 4, 2010, the Court vacated the trial date, and thereafter, reset trial to begin on July 27, 2010. On July 6, 2010, Stacy Hoyt was served with a second subpoena to appear at trial and produce documents on the first day of new trial date. (Ex. 3, Second POS for Subpoena to S. Hoyt.) Stacy Hoyt, again, received this subpoena at the office she shares with Plaintiff. Neither Plaintiff nor Stacy Hoyt filed an objection to this subpoena.

On July 6, 2010, the Court vacated the trial date, and reset trial to begin on August 31, 2010. Because of the new trial date, CSDC served Stacy Hoyt, for a third time, with the subpoena to appear at trial and produce documents, again at the office she shared with Plaintiff. (Ex. 4, Third POS for Subpoena to S. Hoyt.)

CSDC also served trial subpoenas to appear and/or produce documents at trial on several other individuals, including Plaintiff's accountant Patricia Smith, who had been identified as a witness in the PTO in October 2009. CSDC requested Ms. Smith produce Plaintiff's tax returns, including any 1099 forms. (Ex. 5, Subpoena to Patricia Smith.)

On or about July 22, 2010, Compex Legal Services, Inc. contacted Plaintiff's counsel regarding whether he would need copies of the documents to be produced at trial pursuant to the subpoenas. (Decl. Durrant, ¶ 7.)

Although the subpoenas clearly stated that the documents were to be produced to Courtroom 3 on the first day of trial, CSDC received copies of the subpoenaed documents with declarations from the custodian of records shortly before trial. (Decl. Durrant, ¶ 8.) CSDC's trial counsel, Mr. Andrews and Ms. Durrant, were both out of town in trial from August 6 to August 23, 2010. (Decl. Durrant, ¶ 9.) As soon as trial concluded, counsel returned to the office, compiled the documents and provided Plaintiff with a copy, identifying which Exhibits already identified by CSDC the documents pertained to. (Decl. Durrant, ¶ 10.)

-3-

On August 20, 2010, Plaintiff's counsel sent CSDC a letter regarding the subpoena he issued in February 2010 to compel appearance and document at trial. Plaintiff's counsel wanted to remind CSDC "to bring the documents specified in 'Exhibit A' to the subpoena." (Ex. 11, Letter from Kondrick to Andrews dated August 20, 2010.)

### III.   LEGAL ANALYSIS

#### A.   Plaintiff Waived Any Privilege Against Non-Disclosure of Her Tax Returns By Requesting Lost Wages and Claiming Status as an Employee.

Plaintiff's claim that her tax returns should be destroyed because she maintains a privilege against disclosure is without merit. Although a tax return may enjoy some privilege against disclosure to facilitate tax collection, this privilege is qualified, not absolute. (*Small v. Travelers Prop. Cas. Co. of Am.*, 2010 U.S. Dist. LEXIS 61308, *4 (S.D. Cal. 2010).) "The privilege will not be upheld when (1) the circumstances indicate an intentional waiver of the privilege; (2) the gravamen of the lawsuit is inconsistent with the privilege; or (3) a public policy greater than that of the confidentiality of tax returns is involved." (*Id.* at *3-4.)

A plaintiff who pursues a civil action seeking recovery of lost wages waives the privilege against disclosure of tax returns. (*See Young v. United States*, 149 F.R.D. 199, 205 (S.D. Cal. 1993); *see generally Newson v. City of Oakland*, 37 Cal.App.3d 1050, 155 (1974).) Here, Plaintiff seeks to recover "losses in earnings," "loss of wages, salary and benefits," and "other economic losses" by way of her claims for wrongful termination. (*See* SAC, ¶¶ 47, 53.) Plaintiff has squarely placed at issue her alleged lost wages. By claiming lost wages, Plaintiff has waived the privilege against disclosure of her tax returns.[1]

Likewise, Plaintiff's economic expert, Gene Konrad, produced at his deposition on February 9, 2010, portions of Plaintiff's 2005, 2006, and 2008 Corporate Tax Returns and testified that he relied on the tax returns in forming his opinions:

Q: Do you believe that the income Dr. Hoyt earned outside of CSD was a fraction of what she earned at CSD?

---

[1] As CSDC explained to Plaintiff, it does not appear that CSDC will need to submit Plaintiff's entire tax return for each year into evidence, but only certain relevant pages. (*See* Plf. Ex. A.)

-4-

1  A. Yes.

2  Q: And what do you base that on?

3  A: Based on the documents that show the tax return that she prepared. And the compensation coming from CSDC flowed into that tax return....

4

5  Q: I am going to mark, as Exhibit 7, Dr. Hoyt's tax return for 2005. Did you review Exhibit 7, in forming your opinion here today?

6  A: That was part of the documentation, yes.

(Ex. 7, Konrade Depo., at 36:17-37:23, 39:18-25; Ex. 8, U.S. 2005 Income Tax Return for S Corp; Ex. 9, U.S. 2006 and 2008 Income Tax Return for S Corp.) Voluntary disclosure of a privileged communication constitutes waiver of the privilege as to all other such communications on the same subject." (*Young*, 149 F.R.D. at 205, citing *Chinnici v. Central Dupage Hosp. Ass'n*, 136 F.R.D. 464, 465 (N.D. Ill. 1991) ["Production of some privileged documents waives the privilege as to all documents of the same subject matter."].) Because Plaintiff waived the privilege as to her 2005, 2006 and 2008 tax return by producing it to her expert witness, she also waives the privilege as to her other tax returns. This is especially important since her expert specifically relies on Plaintiff's tax returns in forming his opinions.

Moreover, one of the important questions at issue in this trial is whether Plaintiff was an employee of CSDC (as she claims) or was an independent contractor (as alleged by CSDC). One of the factors the jury should consider when making this determination is whether the parties believed they created an employee-employer or independent contractor-employer relationship. (*See S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341, 351 (1989).) The fact that Plaintiff's corporate tax returns report earnings from CSDC, while her individual tax returns do not, relates directly to the independent contractor/employer relationship. Plaintiff has put her status as an employee/independent contractor directly at issue by filing this lawsuit. Thus, she has waived the privilege from disclosure of her tax returns.

Plaintiff's reliance on *Weingarten v. Superior Court*, 102 Cal.App.4th 268 (2002) is misplaced. *Weingarten* involved the disclosure of a ***defendant's*** tax returns during the punitive damages phase. (*Id.* at 270.) The production of financial records of a defendant is different than the production of financial records of a plaintiff since the plaintiff voluntarily places her financial

-5-

condition at issue by filing the lawsuit. More importantly, the court in *Weingarten* compelled the disclosure of the tax returns, finding that public policy outweighed the privilege against disclosure. (*Id.* at 276-277.)

Likewise, *Schnabel v. Superior Court*, 5 Cal.4th 704 (1993) does not help Plaintiff. *Schnabel* involved divorce proceedings, where the court affirmed the order compelling the production of corporate tax records involving the husband, finding the returns were relevant to the wife's interest in determining the value of the corporation. (*Id.* at 723.) And *Webb v. Standard Oil Co.*, 49 Cal.2d 509 (1957) involved a claim for damage to a house after negligent work by a contractor. Quantifying the damage to the house does not implicate the individual's tax returns, unlike Plaintiff's claim for lost wage. The law clearly recognizes that tax returns will not enjoy a privilege against disclosure when the information contained in the tax returns is directly on point to issues raised by a plaintiff filing a lawsuit.

To the extend there is any concern regarding disclosure of her social security number or other sensitive information, CSDC offered to redact such information in the event the document is admitted into evidence. (*See* Plf. Ex. C.) Accordingly, there is no basis to reject the use of Plaintiff's tax returns at trial, and her motion should be denied.

### B. CSDC Has Acted Consistently with the Rules of the Court.

Plaintiff claims the documents subpoenaed for trial should not be admitted into evidence because Defendant did not provide a copy of the document until five days before trial. However, Plaintiff's argument is nonsensical since the subpoenas were specifically for the production of documents *at trial*. The use of document subpoenas for trial witnesses is commonly employed by plaintiffs and defendants alike. (*See, e.g., Todd v. Lamarque*, 2008 U.S. Dist. LEXIS 28216, *9 (N.D. Cal. 2008) [court ordered witness to comply with subpoena issued by party commanding appearance to testify at trial and production of documents]; *see generally Televisa S.A. de C.V. v. Univision Communs., Inc.*, 2008 U.S. Dist. LEXIS 106382, *6 (C.D. Cal. 2008) [recognizing that party may subpoena a third-party to produce documents at trial, but overly broad and unduly burdensome requests are subject to quash].)

DEFENDANT'S OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION    07 CV 1733 BEN (RBB)
TO QUASH OR OTHERWISE MODIFY TRIAL SUBPOENAS

1    Moreover, all of the documents requested to be produced at trial were already in
2 Plaintiff's possession or readily available to Plaintiff. For example, CSDC requested contracts
3 signed by Plaintiff with other entities. There is no doubt that Plaintiff has seen these documents
4 before CSDC recently reproduced them since she signed them. Likewise, she either retains a
5 copy of such contracts, or has access to those documents. Likewise, a vast majority of the
6 "1,000 pages" provided to Plaintiff are her own tax returns. Plaintiff's claim that CSDC
7 "ambushed" her by providing her with her tax returns or contracts she signed is clearly
8 disingenuous.

9    Although Plaintiff claims CSDC has subpoenaed witnesses to testify at trial who were not
10 identified in the PTO, Plaintiff is incorrect. Both Patricia Smith and Stacy Hoyt were identified
11 as witnesses in the PTO ten months ago. Thus, Ms. Smith can testify about Plaintiff's tax
12 returns, and Ms. Hoyt can testify about how she was compensated for the work she performed at
13 the San Diego Job Corps Center pursuant to the contract between Plaintiff and CSDC.
14 Moreover, CSDC can question Plaintiff about the contracts she signed with other entities. CSDC
15 has not violated the Rules of this Court, and therefore requests the Court deny Plaintiff's *ex parte*
16 motion.

17    **C.   The Documents Subpoenaed Are Not Subject to Any Other Privilege.**

18    Although Plaintiff does not address the issue in her legal argument section, Plaintiff
19 makes a vague reference in her introduction that the documents subpoenaed are not admissible
20 because they may contain private patient information, and may contain attorney work-product
21 information to the extent Plaintiff engaged in a forensic practice. Yet, Plaintiff does not cite to a
22 single case to support her claim. This is because she cannot do so, since neither privilege
23 belongs to Plaintiff.

24    A patient may have a privacy interest in certain information. However, Plaintiff has not
25 identified a single piece of private information that may be disclosed by production of her
26 contracts with entities or documents related to payments made to Plaintiff for services rendered
27 by Plaintiff. Likewise, the right to assert such privilege belongs with the entity producing the
28

documents, not with Plaintiff. And any concern can be easily resolved by redacting private information prior to admission into evidence.

Similarly, to the extent Plaintiff was retained by an entity to perform forensic work, the attorney work-product privilege associated with that work would belong to the entity producing the documents, not with Plaintiff. Considering that the documents were produced by the entities, there is no merit to Plaintiff's claim of privacy or attorney work-product privilege.

### IV. CONCLUSION

Plaintiff has provided no legal basis to exclude the documents subpoenaed for trial. Accordingly, CSDC respectfully requests the Court deny Plaintiff's *ex parte* application in its entirety.

Dated: August 30, 2010

ANDREWS · LAGASSE · BRANCH & BELL LLP

By: */s/ Jonathan D. Andrews*
Jonathan D. Andrews
Shauna L. Durrant
Attorneys For Defendant
CAREER SYSTEMS DEVELOPMENT CORPORATION